UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ZBIGNIEW KOWAL, et al.,

                Plaintiffs,

       -against-

ANDY CONSTRUCTION, INC., et al.,

                Defendants.
------------------------------------------------------------X

MEMORANDUM &
ORDER
CV-05-576 (SMG)

GOLD, S., U.S.M.J.:

      Plaintiffs originally brought this action against defendants to recover unpaid wages and other monies owed pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* Pending before me is plaintiffs' application for interest and attorney's fees. Plaintiffs' current application arises from defendants' failure to make payments required under a settlement agreement.

      The parties first reached a tentative agreement to settle this action during a conference held on January 16, 2007. In May, 2007, defendants signed a written Settlement Agreement (the "Agreement"), although they failed to provide a copy of the fully executed Agreement to plaintiffs. Defendants then failed to make all the payments required by the Agreement's terms, apparently because the "Stefatos defendants" encountered financial difficulties.[1] Although the parties attempted to resolve the issues arising from the Stefatos' defendants' financial problems, they ultimately were unable to do so.

      As efforts to consummate the settlement failed, certain plaintiffs asserted claims for retaliatory discharge and consequential damages arising from defendants' breach. I held a hearing on these claims on May 19, 2008 and decided them in defendants' favor. *See* Minute

---

[1] During this litigation, there were two main groups of defendants, referred to by the parties as the "Strategic defendants" and the "Stefatos defendants."

Entry dated May 20, 2008.  The parties subsequently submitted letter briefs with respect to plaintiffs' pending application for interest and attorney's fees.  *See* Docket Entries 141-45.

## Discussion

*Interest*

Paragraph 2 of the Settlement Agreement specifically provides for interest upon default.  The question presented here is the date when interest should begin to accrue.  Plaintiffs seek interest from June 1, 2007, approximately two weeks after defendants signed the Settlement Agreement.  *See* Armenakis Letter dated May 23, 2008 p. 2, Docket Entry 143 (noting that all required signatures were obtained by May 16, 2007).  The Strategic defendants contend that plaintiffs are not entitled to any interest and the Stefatos defendants contend that the earliest date that interest should begin to accrue is July 23, 2007, the date plaintiffs served notice of a default on defendants.

To resolve claims arising from the breach of a settlement agreement in a federal action, courts look to the forum state's substantive law of contract.  *See Ramnarain v. City of New York*, 474 F. Supp. 2d 443, 446 (E.D.N.Y. 2007).  *See also* Agreement ¶ 21 (applying the law of the State of New York to the Agreement).  Under New York law, interest on amounts due for a breach of contract "shall be computed from the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. 5001(b).  Here, the date of the breach is the date that defendants were required to tender the settlement payment but failed to do so.  The Settlement Agreement provided that payment was due "immediately upon the execution of this Settlement Agreement and Release by all parties."  Agreement ¶ 1.  As defendants acknowledge that all parties had

signed the Agreement as early as May 16, 2007, payment was due on that date.[2]

The Strategic defendants contend that plaintiffs are not entitled to any interest or attorney's fees. Carlucci Letter dated May 23, 2008, Docket Entry 142. The Strategic defendants argue that defendants were not required to pay the settlement amounts until the Strategic defendants received releases from the Stefatos defendants and until all issues concerning the Agreement were resolved. I reject defendants' argument. As noted above, payment was due immediately upon execution of the "Settlement Agreement and Release." It is clear from the various status reports submitted by the parties, *see* Docket Entries 111, 112, 114-16, 118, 122, 124, 125, 130 and 134, and the representations made by counsel during various conferences, *see* Minute Entries dated July 20, 2007, Nov. 5, 2007 and Jan. 11, 2008, that the settlement was not consummated because the Stefatos defendants failed to make the required payments. Indeed, the Stefatos defendants virtually concede as much in their submission on the pending motion. *See* Armenakis Letter pp. 2-3. Moreover, I note that the Agreement is actually titled "Settlement Agreement and Releases" and it therefore appears that no additional releases were due under the Agreement prior to defendants' payment. Finally, the Agreement does not contain any language suggesting that final payment was not due until any claims of retaliatory discharge and consequential damages were resolved. Accordingly, I conclude that the Settlement Agreement became effective May 16, 2007, the date by which all parties signed the Agreement.

---

[2] Defendants informed plaintiffs that the Agreement was signed in mid-May, but also stated that they would not make the payment until the end of May, 2007. Pl. Letter dated May 20, 2008 p. 2, Docket Entry 141. On May 31, 2007, the Stefatos defendants requested an additional 30 days to make the payment. *Id.* When there was still no payment by mid-July, and no commitment that it was forthcoming imminently, plaintiffs filed their notice of breach. *Id.* at 3. For the reasons discussed in the text, I conclude that plaintiffs are entitled to interest beginning May 16, 2007, although plaintiffs seek interest from June 1, 2007.

Because the Agreement was executed on May 16, 2007, paragraph 1 of the Agreement obligated defendants to tender the settlement payment on that date. Defendants' failure to do so on that date constitutes a breach and May 16, 2007 is therefore "the earliest ascertainable date the cause of action existed." Consequently, plaintiffs would be entitled to interest on the $610,000 settlement payment beginning from May 16, 2007. Nonetheless, plaintiffs calculate the accrual of interest from June 1, 2007. *See* Pl. Letter dated May 20, 2008 p. 6; Pl. Status Report dated April 8, 2008 p. 2, Docket Entry 134. Plaintiffs' calculations made at the rate of 9% per annum pursuant to N.Y. C.P.L.R. 5004 appear to be accurate, and credit defendants for payments made over time. *Id.* Accordingly, plaintiffs are awarded $24,665.24 in interest through April 24, 2008. As of June 20, 2008, plaintiffs report that $100,000 of the principal remained outstanding. Pl. Letter dated June 20, 2008 p. 5, Docket Entry 145. Plaintiffs are also awarded interest on this balance, beginning from April 25, 2008 through the date of payment (to be calculated at the time of payment), at the rate of 9% per annum.

*Attorney's Fees*

Paragraph 2 of the Agreement specifically provides for recovery of attorney's fees in the event of a default. *See also* Agreement ¶ 11(a) (entitling a non-breaching party to recover costs and attorney's fees due to a breach). In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate.[3] *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182 (2d Cir. 2008); *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Chambless v. Masters, Mates & Pilots Pension Plan*, 885

---

[3] In *Arbor Hill*, the Second Circuit abandoned the term "lodestar" in determining a reasonable attorney's fee award. 522 F.3d at 190.

F.2d 1053, 1058 (2d Cir. 1989). In addition, all requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiffs seek a total of $28,374.19 in attorney's fees. Pl. Letter dated May 20, 2008 p. 7. While not contesting plaintiffs' right to recover attorney's fees, defendants object to several aspects of the fees plaintiffs seek. Armenakis Letter pp. 4-10.

First, defendants object to fees related to plaintiffs Rojas, Nieves, Lopez, and Singh. At the hearing held on May 19, 2008, I denied the individual claims of Rojas and Nieves for retaliation and consequential damages. Although plaintiffs' counsel withdrew his application for most of the fees related to Rojas and Nieves, he failed to withdraw his claims with respect to all of them. *See*, *e.g.*, Billing Entries for Feb. 22, 2008 (.4 billed for speaking with Nieves concerning his unsuccessful claim), Mar. 10, 2008 (.2 billed for teleconference with Nieves), Mar. 26, 2008 (.9 billed for revising and finalizing a notice of breach on behalf of Nieves and .2 billed for teleconference with Nieves), Apr. 25, 2008 (.4 billed for drafting letter to court seeking adjournment of Nieves' hearing).[4] Counsel may not recover fees for Nieves' unsuccessful claims. *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940 (1983); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Defendants' basis for objecting to the fees related to Lopez and Singh is not clear. Defendants contend that "Rojas, Nieves, Lopez and Singh . . . from the outset continued to demand more money . . . [and] proved to be the stumbling block in concluding the resolution of

---

[4] Pursuant to this Court's Order, plaintiffs submitted counsel's time records with their Letter dated June 20, 2008.

this dispute." Armenakis Letter p. 4. As noted above, I ruled against Rojas and Nieves on their claims, but no issues concerning Lopez and Singh were presented to the court. *See* Pl. Status Report dated April 8, 2008; Minute Entry for Hearing Held on May 19, 2008. Accordingly, I see no reason to deny plaintiffs' counsel's fees related to Lopez and Singh.

Second, defendants object to plaintiffs' counsel's billing for clerical and administrative tasks. Indeed, "purely clerical or secretarial tasks should not be billed at [even] a paralegal rate." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 2472 (1989). *See also Diaz v. Paragon Motors of Woodside, Inc.*, 2007 WL 2903920, at *9 (E.D.N.Y. Oct. 1, 2007) ("[T]ime spent on the tasks of photocopying, faxing, mailing, and filing are all clerical in nature and cannot be billed at either attorney or paralegal rates whether performed by an attorney, paralegal or clerk."). That is so because "[c]ourts of this Circuit have recognized that clerical and secretarial services are part of overhead and are not generally charged to clients." *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 368-69 (S.D.N.Y. 2001) (excluding "hours expended on those tasks which are purely administrative, including filing, photocopying, mailing, faxing, and service of papers"). Here, counsel's paralegal or clerk billed extensively for filing, printing, faxing, mailing, and copying. *See*, *e.g.*, Billing Entries for June 9, 2007, July 13, 2007, July 20, 2007 ("prepared envelopes"), and July 25, 2007. Similarly, counsel's paralegal frequently billed .2 hours for "[u]pdating the client's court file." *See*, *e.g.*, Billing Entry for June 4, 2007. This explanation is vague and appears to be administrative and clerical in nature. Accordingly, a significant reduction in the paralegal's hours is warranted.

Third, defendants object to plaintiffs' counsel's billing for matters unrelated to this litigation. Specifically, plaintiff Santana appears to have financial obligations associated with a

divorce that impacted his settlement payments. *See*, *e.g.*, Billing Entries for July 28, 2007, Aug. 13, 17, and 28, 2007, and Sept. 6, 27, and 28, 2007. Defendants should not have to pay counsel's fees for time spent on this issue, and a further reduction in hours on this basis is therefore warranted.

Defendants' remaining objections to the billings they identified as unreasonable, *see* Armenakis Letter pp. 5-10, are not clear. Accordingly, no further reduction in hours is warranted.

As for counsel's rates, plaintiffs' counsel seeks reimbursement at an hourly rate of $350 for himself and an hourly rate of $75 for his paralegals. Defendants have not objected to these rates, and they fall within the range – although at the high end – of those "prevailing in the community for similar service by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547 (1984). *See*, *e.g.*, *Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.*, 2008 WL 2510601, at *5 (E.D.N.Y. June 20, 2008) (finding that "recent case law in this circuit has not approved rates over $300 per hour for associates or $150 per hour for paralegals/clerks"); *Baruch v. Healthcare Receivable Mgmt., Inc.*, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (noting that courts in the Eastern District of New York have awarded attorneys hourly rates ranging from $200 to $375). Accordingly, I find plaintiffs' counsel's rates reasonable.

For all these reasons, I am reducing the fees sought by plaintiffs by 15%. *See Carey*, 711 F.2d at 1146 (recognizing that courts may use percentage reductions, as opposed to a line-by-line analysis, as a practical means of trimming a fee application). Consequently, I calculate the presumptively reasonable fee as $23,532.25 ($27,685 x .85) and award plaintiffs this amount in

attorney's fees.

Plaintiffs also seek $689.19 in costs. These costs include fees for long-distance phone service, postage, travel, ECF charges, photocopying, and archiving. These amounts are reasonable and compensable. *See Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *8 (E.D.N.Y. June 13, 2005). Moreover, defendants do not object to these costs and the Settlement Agreement specifically provides for reimbursement for costs upon default. *See* Agreement ¶ 2. With respect to online research services, however, courts in the Eastern District of New York have not permitted recovery of these costs, following *U.S.A. ex rel. Use & Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). *See King v. JSC Enters.*, 325 F. Supp. 2d 162, 171-72 (E.D.N.Y. 2004). Accordingly, plaintiffs are awarded $660.92 for costs incurred, subtracting $28.27 in online research services from the $689.19 plaintiffs seek.

## Conclusion

For the reasons discussed above, plaintiffs are awarded interest through April 24, 2008 in the amount of $24,665.24, additional interest on the outstanding $100,000 principal amount due and owing, to be calculated at the time of the final payment at the rate of 9% per annum beginning from April 25, 2008 through the date of the final payment, and an award of fees and costs in the amount of $24,193.17. The parties having settled the action and there being no pending applications before the Court, this case is dismissed without prejudice to the right of any party to move to reopen to enforce the terms of the settlement agreement or reduce any outstanding amount to judgment.

**SO ORDERED.**

/s/
STEVEN M. GOLD
United States Magistrate Judge

Dated:    Brooklyn, New York
          September 25, 2008